**IN THE UNITED STATED DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION**

JUDY KNUDSON, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

BAYER HEALTHCARE LLC, and

ELANCO ANIMAL HEALTH, INC.,

    Defendants.

Case No. 6:21-cv-3108

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Judy Knudson, individually and behalf of all others similarly situated (collectively "Plaintiffs"), respectfully offers the following for her Complaint against Bayer HealthCare LLC and Elanco Animal Health, Inc. (collectively "Defendants"):

1. Seresto flea collars were advertised to pet-owning consumers and labeled as a safe way to prevent flea and ticks for dogs and cats.

2. But Seresto flea collars were not safe: they have been linked to almost 1,700 pet deaths, over 75,000 incidents involving pet harm, and nearly 1,000 incidents involving human harm. Despite this, their makers continued to tout their safety and conceal their risks.

3. Because Plaintiffs purchased a worthless product, they have suffered an economic loss so the makers of Seresto flea collars could reap ill-gotten profits.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this controversy under 28 U.S.C. § 1332(d) as this case alleges a class action claim in which the matter in controversy exceeds

1

$5,000,000 and most of the class members are citizens of a state different from the citizenship of the defendants.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Western District of this Court and Defendants are subject to personal jurisdiction in the Western District of this Court. Pursuant to L.R. 3.2, divisional venue is proper in the Southwestern Division of this Court because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in that Division.

## Parties

6. Plaintiff Judy Knudson is a resident and citizen of the State of Missouri, where she purchased Seresto flea collars for her dogs and cats at Tractor Supply and Wal-Mart. Two of her pets—one dog and one cat—previously died after wearing the Seresto collar. Upon learning of the serious safety risks posed by Seresto collars, she removed the product from her current pets and has stopped using them. She continues to monitor her pets for serious medical problems.

7. Bayer HealthCare LLC is a Delaware corporation limited liability company with its headquarters in New Jersey. Upon information and belief, Bayer HealthCare LLC is a citizen of Delaware and New Jersey.

8. Elanco Animal Health, Inc., is an Indiana corporation with its headquarters in Indiana. Elanco Animal Health, Inc., is a citizen of Indiana. Elanco Animal Health, Inc., purchased the Seresto brand in 2020 from Bayer HealthCare LLC.

## General Allegations

9. Seresto flea collars were advertised and sold—and continue to be advertised and sold—as a safe means to prevent fleas, ticks, and lice for cats and dogs.

2

10. Seresto flea collars were marketed as a long-term option for flea and tick prevention that saves the consumer from applying monthly topical or oral treatments.

11. Seresto flea collars were developed by the Animal Health Division of Bayer HealthCare LLC in 2012 and received approval from the United States Environmental Protection Agency ("EPA").[1] They work by combining two pesticides, imidacloprid and flumethrin, which Bayer found made them more toxic against fleas.

12. The active ingredient dosage of imidacloprid and flumethrin was advertised as a low dosage or a low concentration.

13. The packaging and labeling for Seresto flea collars and the marketing, advertising, and promotional materials for Seresto flea collars contained no disclaimer warning that the risks of toxicity may be so great that they could be responsible for incidents involving harm to pets and humans as well as pet deaths, as demonstrated below:[2]

---

[1] https://www3.epa.gov/pesticides/chem_search/ppls/011556-00155-20140403.pdf (last accessed May 3, 2021).

[2] Seresto Flea and Tick Collar for Dogs, Amazon, https://www.amazon.com/Seresto-flea-collar-8-month-prevention/dp/B00B8CG602 (last accessed Apr. 16, 2021) (showing Bayer labeling). *See also* Product Label for Bayer Seresto Collar for Dogs, https://fleascience.com/wp-content/uploads/2015/11/Product-Label-for-Bayer-Seresto-Collar-for-Dogs.pdf (last accessed Apr. 16, 2021).



14. The packaging and labeling of Seresto flea collars, instead, only warned of slight hair loss or mild skin reactions for pets due to the mechanical irritation from wearing the collar; dermatitis, inflammation, eczema, or lesions in "very rare cases"; and other "individual sensitivities" in pets and "sensitivity reactions" in humans.

15. Seresto flea collars did not contain any warning that the product posed a risk of seizures, gastrointestinal problems, and cancers in pets and seizures, skin conditions, and neurological conditions in humans.

16. As a result, when Plaintiffs purchased and used Seresto flea collars, they reasonably believed—and did believe—Seresto flea collars did not pose a risk of severe harm to pets or humans.

17. Notwithstanding the packaging, labeling, advertising, marketing, and promotional materials, Seresto flea collars do pose a threat of severe harm to pets and humans. Seresto flea collars have been linked to significant harm to pets and their human owners.

4

18. EPA documents reveal the agency has received reports connecting Seresto flea collars to 1,698 animal deaths.

19. Additionally, Seresto flea collars have resulted in over 73,000 other incidents involving harm to pets. Of these, 45,552 were classified by the EPA as being moderate, major, or fatal incidents.

20. Seresto flea collars have caused neurological damage and seizures in pets.

21. Seresto flea collars have caused cancer in pets.

22. Humans have been harmed by Seresto flea collars, as well. Between 2013 and 2018, the EPA received reports of 907 incidents, including 19 severe incidents. Of those, eight people had dermal symptoms, and seven had neurological symptoms, including numbness and headaches.

23. In one incident, a twelve-year-old boy who slept in bed with a dog wearing a Seresto flea collar was hospitalized due to seizures and vomiting. In another, a 67-year-old woman who slept in a bed with a dog wearing a collar reported having heart arrhythmia and fatigue. *See* Popular Flea Collar Linked to Almost 1,700 Pet Deaths. The EPA Has Issued No Warning., USA Today (Mar. 2, 2020).[3]

24. Defendants had knowledge of these risks from EPA incident reports, online reviews, and other media reports.

25. When Defendant Elanco purchased the Seresto brand in 2020, it would have discovered the risks posed by Seresto flea collars when performing its due diligence.

26. But the labeling, packaging, advertising, merchandising, and promotional materials for Seresto flea collars do not mention these risks. As a result, pet-owning consumers, including

---

[3] www.usatoday.com/story/news/investigations/2021/03/02/seresto-dog-cat-collars-foundharm-pets-humans-epa-records-show/4574753001/).

Plaintiffs, have paid—and continue to pay—for products that pose significant, undisclosed risks to them and their pets.

27. More than 25 million Seresto flea collars have been sold since 2012.

28. The Manufacturer Suggested Retail Price for a single Seresto flea collar is roughly $60.

29. In 2020 alone, Defendant Elanco Animal Health, Inc., received $84 million in revenue from Seresto flea collars.

30. These are profits Defendants would not have received had the risks of Seresto flea collars been fully disclosed to pet-owning consumers, including Plaintiffs.

31. And in spite of evidence that Seresto flea collars pose significant health risks to pets and humans, Defendants have refused to recall their product. Instead, they have doubled down, claiming there is no causal evidence sufficient to support a recall of their product. Defendants thus continue to market Seresto flea collars as a safe and effective way to protect pets against fleas and ticks.

**Tolling**

32. Any applicable statute of limitations has been tolled by the deceptive conduct alleged herein. Through no fault or lack of due diligence, Plaintiffs were deceived regarding the risks of Seresto flea collars and could not reasonably discover those risks on their own.

33. Plaintiffs' statute of limitation accrued upon discovery that Seresto flea collars presented serious safety risks. These risks were not disclosed to Plaintiffs prior to purchase, and Plaintiffs could not have discovered these risks through reasonably diligent investigation.

34. Defendants actively concealed the fact that Seresto flea collars posed serious safety risks to pets and consumers. Defendants had actual knowledge that Seresto flea collars were not

safe. But in spite of this, Defendants fraudulently concealed this information from consumers like Plaintiffs.

35. Defendants are estopped from relying on any statutes of limitation as a defense to this action because they were under a continuous duty to disclose to Plaintiffs the true character, quality, and nature of Seresto.

## Class Action Allegations

36. Plaintiff Judy Knudson brings this case as a class action pursuant to Fed. R. Civ. P. 23 on her own behalf and as the class representative on behalf of the following:

> **Persons who purchased a Seresto flea collar in Missouri within the applicable statute of limitations.**

37. Plaintiffs reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

38. Excluded from the Class are governmental entities, Defendants, and Defendants' officers, directors, affiliates, legal representatives, and employees.

39. This action has been brought and may be maintained as a class action under Federal Rule of Civil Procedure 23.

40. **Numerosity.** This class numbers in the thousands of persons. As a result, joinder of all class members in a single action is impracticable. Class members may be informed of the pendency of this class action through a variety of means, including but not limited to, direct mail, email, published notice, and website posting.

41. **Existence and Predominance of Common Questions of Law and Fact.** There are questions of fact and law common to the class that, under Missouri law, predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation:

a) whether Plaintiffs purchased a Seresto flea collar;

b) whether the advertising, merchandising, and promotional materials directed to Plaintiffs were deceptive regarding the risks posed by Seresto;

c) what Defendants made representations regarding the safety of their products;

d) whether Defendants omitted material information regarding the safety of their products;

e) whether Seresto flea collars were merchantable; and

f) whether Defendants were unjustly enriched by sales of Seresto flea collars.

The questions set forth above predominate over any questions affecting only individual persons concerning sales of Seresto flea collars in Missouri, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of Plaintiffs' claims.

42. **Typicality.** Plaintiffs' claims are typical of those of the class in that the class members uniformly purchased Seresto flea collars and were subjected to Defendants' uniform merchandising materials and representations at the time of purchase.

43. **Superiority.** A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual class members could create a risk of inconsistent adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests. In addition, it would be impracticable and undesirable for each member of the class who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent

adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

44. **Adequacy.** Plaintiff is an adequate representative of the class because she is a member of the Class and her interests do not conflict with the interests of the class she seeks to represent. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and her undersigned counsel. Counsel are experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

45. Additionally, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

   a) The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants;

   b) The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

   c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the Class members as a whole.

## COUNT I
### Violation of the Missouri Merchandising Practices Act

46. Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

47. The Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*, prohibits "act, use or employment by any person of any deception, fraud, false pretense, false

promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020(1).

48. Seresto flea collars were merchandise within the meaning of Mo. Rev. Stat. § 407.010(4).

49. Defendants and Plaintiffs are persons within the meaning of Mo. Rev. Stat. § 407.010(5).

50. Defendants were engaged in trade or commerce within the meaning of Mo. Rev. Stat. § 407.010(7).

51. Plaintiffs purchased Seresto flea collars primarily for personal, family or household purposes within the meaning of Mo. Rev. Stat. § 407.025.1(1).

52. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Missouri Merchandising Practices Act by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts on the labels and packaging of Seresto flea collars, including that: such flea collars were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose; contained unsafe levels of imidacloprid and flumethrin; and/or caused serious health problems, including seizures and cancer.

53. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Missouri Merchandising Practices Act by knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts in the marketing, advertising, and promotions for their Seresto flea collars, including that: such flea collars were inherently defective; unreasonably dangerous; not fit to be used for their intended purpose;

contained unsafe levels of imidacloprid and flumethrin; and/or caused serious health problems, including seizures and cancer.

54. By knowingly and intentionally misrepresenting, omitting, concealing, or failing to disclose material facts regarding Seresto flea collars, as detailed above, Defendants engaged in one or more unfair or deceptive business practices prohibited by the Missouri Merchandising Practices Act.

55. Defendants' misrepresentations and omissions regarding the inherently defective and unreasonably dangerous nature of Seresto flea collars were disseminated to Plaintiffs in a uniform manner.

56. Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppression of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to, and in fact, did deceive reasonable consumers, including Plaintiffs, about the inherently defective and unreasonably dangerous nature of Seresto flea collars.

57. The facts regarding Seresto flea collars that Defendants knowingly and intentionally misrepresented, concealed, omitted, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiffs, who considered such facts to be important to their purchase decisions with respect to Seresto flea collars.

58. Plaintiffs were aggrieved by Defendants' violations of the Missouri Merchandising Practices Act because they suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' knowing and intentional misrepresentations, concealments, omissions, and failures to disclose material facts regarding Seresto flea collars.

59. Plaintiffs were deceived by Defendants' misrepresentations, concealments, omissions, and failures to disclose material facts regarding Seresto flea collars. Had Defendants not engaged in the deceptive acts and practices alleged herein, Plaintiffs would not have purchased Seresto flea collars, and, thus, they did not receive the benefit of the bargain and/or suffered out-of-pocket loss.

## COUNT II
### Breach of Implied Warranty

60. Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

61. At all relevant times, Defendants were merchants with respect to Seresto flea collars which were sold in Missouri and were in the business of selling such products.

62. Each Seresto flea collar sold by Defendants came with an implied warranty that it would be merchantable and fit for the ordinary purpose for which it would be used, including impliedly warrantying on the labels for their Seresto flea collars that the products were safe and/or did not cause seizures or cancer or an unreasonable risk of seizures or cancer.

63. Defendants breached their implied warranty of merchantability pursuant to Mo. Rev. Stat. § 400.2-314 because their products were not safe and/or did cause seizures or cancer or an unreasonable risk of seizures or cancer.

64. Seresto flea collars are not fit for their intended use—or any use—because they have dangerous propensities when used as intended and their use causes an increased risk of people and animals developing seizures, cancer, or other severe health problems.

65. Defendants had reason to know Plaintiffs' particular purpose in buying Seresto flea collars and knew that Plaintiffs relied on Defendants' skill or judgment in furnishing appropriate

12

goods that did not cause seizures or cancer or create an unreasonable risk of seizures, cancer, or other severe health problems.

66. Plaintiffs have had sufficient direct dealings with either Defendants or their agents (including distributors, dealers, and authorized sellers) to establish privity of contract between Defendants and Plaintiffs.

67. Further, Plaintiffs were intended third-party beneficiaries of implied warranties made by Defendants to purchasers of Seresto flea collars.

68. Plaintiffs were injured as a direct and proximate result of Defendants' breaches of implied warranties of merchantability. Plaintiffs were damaged as a result of Defendants' breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of Seresto flea collars, they would not have purchased such products.

## COUNT III
### Unjust Enrichment

69. Plaintiff incorporates the allegations set forth in the preceding paragraphs as though set forth fully herein.

70. Plaintiffs conferred a benefit on Defendants in the form of purchases of Seresto flea collars.

71. Defendants accepted and retained these benefits from Plaintiffs. Defendants knowingly benefited from their unjust conduct—at Plaintiffs' expense—by continuing the manufacture, merchandise, and sale of a product they knew was not safe.

72. Defendants were aware or should have been aware that they were receiving the benefit of Plaintiffs' purchases at the time they were made and accepted and retained those benefits.

73. Defendants' acceptance and retention of these benefits was unjust and inequitable and resulted in Defendants being unjustly enriched.

74. Equity cannot in good conscience permit Defendants to retain the benefits derived from Plaintiffs through their unjust and unlawful acts without paying for said benefits.

75. Plaintiffs recognize they may not double-recover their economic losses. Accordingly, should Plaintiffs prevail on Count I or Count II herein, then they would not be entitled to recover under this Count III. However, should Plaintiffs not prevail on their Count I or Count II, Plaintiffs do not otherwise have an adequate remedy at law.

## Prayer for Relief

Wherefore, Plaintiff, on behalf of herself and the Class, demands judgment against Defendants and prays this Court:

1. Certify the claims set forth above as a class action under Fed. R. Civ. P. 23;
2. Designate Plaintiff Judy Knudson as representative of the Class, and her undersigned counsel as Class Counsel;
3. Enter an award of damages that fairly and reasonably compensates Plaintiffs for their out-of-pocket losses;
4. Enter an award of pre- and post-judgment interest as provided by law;
5. Enter an award of punitive damages; and
6. Enter an award for attorneys' fees and costs.

## Demand for Jury Trial

Plaintiff, on behalf of herself and the Class, respectfully demands a trial by jury of all issues so triable.

Date: May 3, 2021	Respectfully submitted,

**WILLIAMS DIRKS DAMERON LLC**

*/s/ Matthew L. Dameron*
Matthew L. Dameron	MO Bar No. 52093
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Tel:	(816) 945-7110
Fax:	(816) 945-7118
Email: matt@williamsdirks.com

*Counsel for Plaintiff and the Class*